1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9   **GINA CARUSO,**                           **CASE NO. 1:20-CV-0084 AWI EPG (PC)**

10                **Plaintiff**

11         **v.**                              **ORDER ON DEFENDANT'S MOTION
                                                TO DISMISS**

12  **MOLLY HILL et al.,**

13                **Defendants**               (Doc. No. 17)

14

15

16         This is a prisoner civil rights action brought by Plaintiff Gina Caruso ("Caruso") against

17  current and former personnel of the California Institution for Women ("CIW") prison.  Caruso is

18  represented by counsel and alleges two causes of action under 42 U.S.C. § 1983, one for violation

19  of the First Amendment and one for violation of the Fourteenth Amendment.  Currently before the

20  Court are Defendants' Rule 12(b)(6) motion to dismiss.  For the reasons that follow, the motion

21  will be granted.

22

23                    **RULE 12(b)((6) FRAMEWORK**

24         Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

25  plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

26  dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

27  absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc.,

28  795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-

pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility."  Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.  Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014).  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

## FACTUAL BACKGROUND[1]

While Caruso was incarcerated at the Central California Women's Facility ("CCWF") prison, she was subject to an improper strip search in July 2013.

In May 2015, Caruso filed a lawsuit in this Court against CCWF personnel.  That lawsuit, the "CCWF Lawsuit," remains pending.  After filing the CCWF Lawsuit, Caruso was transferred to CIW in October 2015, where she continued to prosecute the CCWF Lawsuit *pro se*.

On January 26, 2018, the Magistrate Judge requested that the warden of CIW, Defendant Molly Hill ("Hill") investigate why at least two orders served on Caruso were returned to the Court as "undeliverable," even though Caruso was housed at CIW.  On February 9, 2018, Hill informed the Court that the P.O. Box address that the Court used had been discontinued and that the appropriate address was CIW's physical address.  A review of the docket indicates that no further orders were issued with respect the mailing/address issue, and no further service problems appear to have occurred.

On February 23, 2018, Caruso informed the Court that documents related to the prosecution of the CCWF Lawsuit were missing or removed from Caruso's cell following a cell search and after Caruso was released from Administrative Segregation ("Ad Seg").  On February 28, 2018, the Magistrate Judge interpreted Caruso's filings as indicating that Caruso's evidence and legal property were being destroyed by CIW personnel and ordered Hill to investigate and respond to Caruso's allegations.  Hill responded on March 21, 2018, that there were no records of any searches of Caruso's cell being conducted or documents being seized or confiscated.  A review of the docket indicates that no further orders were issued with respect to the missing documents/evidence issue, and no other loss of documents/evidence appears to have occurred.

On April 12, 2018, Caruso filed a request for a court order to allow her to attend the law library for up to two hours per week because CIW was denying her access and not responding to requests for copies of legal documents.  On April 16, 2018, the Magistrate Judge ordered Hill to respond to Caruso's request for law library access.  On April 30, 2018, Hill responded that Caruso

---

[1] The factual background is derived from the Complaint and from this Court's docket in the CCWF Lawsuit, *Caruso v. Solorio*, 1:15-cv-780 AWI EPG.  The Court takes judicial notice of its docket in the CCWF Lawsuit.  See Fed. R. Evid. 201; Soto v. Castlerock Farming & Transp., Inc., 282 F.R.D. 492, 496 n.2 (E.D. Cal. 2012).

was in Ad Seg, that Ad Seg had a legal kiosk, Caruso needs to request to use the kiosk, Caruso had requested use of the kiosk only one time, and the request was granted.  Hill also stated that no requests for copies by Caruso had been received.

On May 15, 2018, Caruso responded to Hill's declaration.  Caruso attached copies of three separate inmate requests for legal copies.  The requests were all addressed to the law library, all made in April 2018, and all pre-dated Hill's declaration by at least eight days.

On June 20, 2018, the Magistrate Judge appointed Caruso's current counsel for purposes of settlement.  However, counsel decided to continue to represent Caruso throughout the remainder of the CCWF Lawsuit.

On August 13, 2018, the Magistrate Judge ordered Hill to file a response to Caruso's evidence and explain the discrepancy between Hill's declaration and Caruso's copies of the three separate legal copies requests.  The Magistrate Judge noted that Hill's response would be considered with respect to possible sanctions for submitting false information to the Court.

On August 18, 2018, in response to a request by Caruso, the Magistrate Judge ordered CIW to provide two confidential phone calls between Caruso and her attorney.

On September 27, 2018, Hill filed a declaration that confirmed that Caruso had filed three requests for legal documents.  Hill stated that two of the requests were not received by library staff and the third was not identified to Hill due to a clerical error.

On October 1, 2018, the Court issued an order that required Hill to provide a contact legal visit between Caruso and her attorney.

On October 23, 2018, the Magistrate Judge declined to impose sanctions against Hill. However, in order to ensure proper communication with counsel, the Magistrate Judge ordered that Caruso have monthly telephone calls with her attorney.

In a letter dated October 29, 2018, Hill informed Caruso's counsel that counsel had violated two regulatory provision when counsel passed a photograph to a different prisoner as part of an unrelated matter.[2]  Hill stated that the letter severed as a first warning regarding legal visits.

---

[2] The photo was a picture of the prisoner and the prisoner's daughter.  The photo was used on the cover page, and as an exhibit to, a commutation petition.

This letter, as well as Caruso's Ad Seg status, was used to deny a contact visit between Caruso and her counsel.  Caruso's counsel responded to Hill and denied that she had violated any regulations.

In February 2019, Caruso filed a motion to strike scandalous representations that were part of a defense motion for additional protections.  Caruso sought to strike particular representations relating to the allegations that her counsel passing contraband/the photo to another inmate.  On April 24, 2018, the Magistrate Judge found that the photo was not contraband and struck various scandalous references within the motion for additional protections.

On March 14, 2019, a classification hearing was held at CIW involving Caruso, Hill, Defendant Associate Warden Richard Montes ("Montes"),[3] Correction Counselor C. Alvarez, and psychologist Dr. Celosse.  At this hearing, Hill stated that Caruso had worn out her (Caruso's) welcome at CIW, that Hill was tired of dealing with Caruso, and that Hill wanted Caruso out of CIW.  Hill compared herself and the Warden of CCWF to divorced parents who passed their unwanted children between each other.  Hill stated that it was CCWF's turn to deal with Caruso and that a transfer from CIW to CCWF had been approved through a "Warden to Warden Agreement."  Caruso reminded Hill that Caruso had five validated enemy concerns at CCWF. Hill responded that she had worked very hard to make the five enemy concerns go away and that Caruso would have to figure out how to deal with any enemies upon arrival at CCWF.  Hill ordered Caruso's immediate and involuntary transfer to CCWF and prohibited Caruso from returning to her cell to collect her personal belongings.  After the hearing concluded, Caruso was escorted to a transport van for transport to CCWF.  Dr. Celosse was not permitted to meet with Caruso in a therapeutic setting and was only allowed to speak with Caruso briefly in the transportation van.  Hill's decision to transfer Caruso was made with full knowledge that Caruso had five validated enemy concerns at CCWF.

Hill's March 2019 transfer of Caruso was done outside of the framework established by 15 Cal. Code Regs. § 3379, which deals with inmate transfers.  Instead, Hill evaded the proper regulations and transferred Caruso though an improper "Warden to Warden Agreement."  Caruso

---

[3] The Complaint identifies Montes as the Acting Warden of CIW, but in March 2019, Montes was an Associate Warden.

argues on information and belief that male prisoners are transferred between prisons in accordance with § 3379, but female prisoners are often transferred between CIW and CCWF through illegal "Warden to Warden Agreements."  Defendants Associate Director Amy Miller ("Miller")[4] and Secretary Ralph Diaz ("Diaz")[5] knew or should have known of the illegal "Warden to Warden" transfers, but instead of taking actions to stop those transfers, they ratified the transfers (including Caruso's transfer).

Upon Caruso's arrival at CCWF, an investigation was conducted regarding Caruso's five enemy concerns.  Until completion of the investigation, Caruso was advised that she was going to be released into the general population.  However, in August 2019, CCWF validated Caruso's enemy concerns and informed her that she would be transferred back to CIW, pending resolution of one enemy concern at CIW.

On October 10, 2019, the CCWF classification committee informed Caruso that the single enemy at CIW had been resolved, but that the transfer back to CCWF was on hold pending a phone call to Hill by the warden of CCWF.  On October 29, 2019, Caruso was informed that Hill refused to accept Caruso back and that Caruso should expect the transfer to be halted.  On November 1, 2019, Miller determined that Caruso's presence at CIW posed a threat to the safety and security of CIW.

Due to the decisions of Hill and Miller, CCWF decided on November 1, 2019 to retain Caruso in Ad Seg because of enemy and safety concerns.  Miller, Diaz, and Montes all have the authority transfer Caruso back to CIW but have not done so.

Since at least November 1, 2019, but possibly since her March 2019 arrival,[6] Caruso has been in Ad Seg for her safety and is confined to her cell most days for 24 hours a day, except for a 15 minute showers three times per week.  Caruso has no access to rehabilitative programs, church,

---

[4] Miller is the Associate Director of the Division of Adult Institutions for Female Offender Programs and Services.

[5] Diaz is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR").  In March 2019, Diaz was the Acting Secretary of CDCR.

[6] The Complaint is unclear.  At one point, the Complaint alleges that Caruso has been in Ad Seg at CCWF since March 2019.  See Complaint ¶ 61.  However, at another point, the Complaint suggests that Caruso was in the general population from March 2019 to November 1, 2019.  See Complaint ¶¶ 64-70.

1  a health professional with training in drug addiction or sexual trauma, a telephone, or personal

2  family visits.  Although Caruso is confined for safety/non-disciplinary reasons, CCWF has refused

3  classify her with a "non-disciplinary status," which would otherwise entitle her to the same

4  privileges as general population inmates.  Caruso is also subject to many strip searches because of

5  the Ad Seg status.  To avoid the "triggering impact" of being strip searched at CCWF, Caruso

6  stays in her cell as much as possible.

7       From the above allegations, Caruso brings two causes action, both of which are alleged

8  against all Defendants.  The first cause of action alleges a violation of the First Amendment in the

9  form of "retaliation for enforcing her constitutional right of access to the courts, in violation of the

10  First Amendment."  Complaint ¶ 89.  The second cause of action alleges a violation of the right to

11  due process under the Fourteenth Amendment "by authorizing her illegal transfer to CCWF,

12  pursuant to the Warden-to-Warden Agreement and in violation of CDCR regulations, and by

13  causing her prolonged and continued confinement at CCWF in Ad Seg, in which she is denied

14  non-disciplinary status."  Id. at ¶ 94.

16               **DEFENDANTS' MOTION**

17     *Defendants' Arguments*

18       Defendants argue that the retaliation claim fails for several reasons.  First, there are no

19  allegations that Diaz, Montes, or Miller had any knowledge of the events that form the basis of

20  any retaliation and it is not enough that these defendants have supervisory roles within CIW or

21  CDCR.  Second, the basis of the retaliation claim is the documents submitted by Hill at the

22  direction of the Magistrate Judge.  However, filing papers with a court is protected activity under

23  the *Noerr-Pennington* doctrine.  Third, the allegations do not plausibly show a chilling effect on

24  any First Amendment rights or any retaliation because Caruso exercised her constitutional rights.

25  Instead, the allegations demonstrate that no chilling effect actually occurred.  When a prisoner has

26  counsel, the right to access the courts is satisfied.  Further, there is nothing abnormal about a

27  prisoner transfer.  Caruso went to one institution in which she was in Ad Seg, to another institution

28  in which she was in Ad Seg.  No allegations show that the transfer was due to protected activity.

1    Defendants also argue that the second cause of action fails because the Fourteenth

2 Amendment does not protect a convicted prisoner against transfers from one institution to another

3 within the prison system.  The Supreme Court has recognized that this is so, regardless of whether

4 the transfer resulted from an inmate's misbehavior or could be labeled disciplinary or punitive.

5 Relatedly, because there is no due process rights involved in a prison transfer, any claims for

6 injunctive relief for violation of the Fourteenth Amendment should be dismissed.

7    In reply, Defendants argue that there are no cognizable Fourteenth Amendment conditions

8 of confinement claims as such claims can be based only on the Eighth Amendment.  Further, there

9 is no plausible Substantive Due Process claim alleged because there are no allegations that any

10 Defendant knew of the conditions that Caruso would face at CCWF.  Defendant also argues that

11 the first cause of action fails because no allegations indicate that, but for her litigation activities,

12 Caruso would have been transferred to CCWF, and there are no facts that show any chilling effect

13 on her litigation activities.

14    *Plaintiff's Opposition*

15    Caruso argues that dismissal is not appropriate.  With respect to the retaliation claim,

16 Caruso argues that the allegations show that Defendants transferred her after she exercised her

17 First Amendment rights to participate in litigation.  The transfer, which led to indefinite Ad Seg

18 confinement, was done with a retaliatory motive.  The timing of the transfer in relation to the

19 motions filed by Caruso and the court ordered responses, along with statements made by Hill at

20 the classification hearing, the failure of Hill to follow state regulations regarding prisoner

21 transfers, and Hill's past history of retaliatory transfers under similar circumstances demonstrate

22 causation/a retaliatory motive.  Further, the fact that Caruso obtained counsel and did not stop

23 litigating does not mean that there was no chilling effect.  Also, neither the transfer nor Caruso's

24 indefinite term of Ad Seg confinement served any valid penological purpose.  Finally, the *Noerr-*

25 *Pennington* doctrine does not apply because the basis of this lawsuit is the retaliatory transfer, not

26 any filings or petitioning activity by Hill in the CCWF Lawsuit.

27    Caruso also argues that she has alleged a plausible Procedural Due Process claim based on

28 her indefinite confinement in Ad Seg in CCWF.  Prisoners in California have a right to be free

from indefinite Ad Seg confinement and the conditions that Caruso is experiencing are "atypical hardships."  Caruso argues that she is in Ad Seg for safety concerns and not as a disciplinary measure.  However, she has not been given a "non-disciplinary status" designation.  That designation would normally give her the same rights as general population inmates and would permit her to engage in therapeutic and rehabilitative activities, attend church, and have visitors.  Instead, Caruso does not have access to these activities and is confined in her cell except for three 15-minute showers per week.  This indefinite confinement distinguishes this case from a normal prison transfer situation.  Because she has a protected liberty interest in avoiding the transfer to CCWF and the indefinite Ad Seg confinement, Caruso argues that her Procedural Due Process rights were violated because she did not receive all of the process that was due under 15 C.C.R. § 3379.  Instead, an illegal "Warden-to-Warden Agreement" was used.

Finally, Caruso argues that her Substantive Due Process rights were violated by the transfer.  Hill transferred Caruso with knowledge that Caruso had multiple validated enemies at CCWF.  Under the "state created danger" doctrine, the transfer to CCWF was unconstitutional.

### *Discussion*

1.    Noerr- Pennington Doctrine

The *Noerr-Pennington* doctrine derives from *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965), which held that private actors are immune from antitrust liability for petitioning the government.  Sanders v. Brown, 504 F.3d 903, 912 (9th Cir. 2007).  *Noerr-Pennington* has been extended beyond the antitrust context and "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the [First Amendment] Petition Clause."  Nunag-Tanedo v. East Baton Rouge Par. Sch. Bd., 711 F.3d 1136, 1139 (9th Cir. 2013); Sosa v. DIRECTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006)  "The essence of the *Noerr-Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct.  Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1006-07 (9th Cir. 2008); Sosa, 437 F.3d at 929.  Petitioning activity includes litigation in court, including the filing of documents in court, as well

1  as conduct that is incidental to the prosecution of a lawsuit.  See Microsoft Corp. v. Motorola, Inc.,
2  795 F.3d 1024, 1047 (9th Cir. 2015); Sanders, 504 F.3d at 912; Sosa, 437 F.3d at 934.

3        Here, the *Noerr-Pennington* doctrine has no application to this case.  Contrary to
4  Defendants' contentions, the conduct that forms the basis of Caruso's claims is not based on any
5  of Hill's conduct in connection with the CCWF Lawsuit.  The first cause of action for retaliation,
6  as alleged in the Complaint and further emphasized by Caruso in opposition, is based on Hill (and
7  others) retaliating against Caruso by transferring her to CIW.  Similarly, the second cause of
8  action for violation of due process, as alleged in the Complaint and further emphasized by Caruso
9  in opposition, is based on the utilization of a Warden-to -Warden Agreement to transfer Caruso to
10  CCWF where she had five validate enemies and Caruso suffering prolonged Ad Seg disciplinary
11  status at CCWF.  Therefore, the conduct that allegedly violated Caruso's rights is not any filing
12  that Hill made in the CCWF Lawsuit, rather, the conduct at issue is the transfer and Caruso's Ad
13  Seg conditions at CIW.  These are actions/conditions that are wholly distinct from any of Hill's
14  filings.  There is no reasonable argument that can be made that the transfer of Caruso or her
15  current Ad Seg conditions are "petitioning" activities.  Since the conduct at issue is not petitioning
16  activity, dismissal of any claim based on the *Noerr-Pennington* doctrine is inappropriate.

17        2.    Official Capacity & Individual Capacity Defendants

18        The Complaint states that each Defendant (Hill, Montes, Miller, and Diaz) are being sued
19  in their official capacities.  See Complaint ¶¶ 4, 5, 6, 7.  Only Hill is also sued in her individual
20  capacity.[7]  See Complaint ¶ 4.  A suit against a government employee in her official capacity is
21  not really a suit against the individual, rather it is a suit against the governmental employer.  See
22  Kentucky v. Graham, 473 U.S. 159, 166 (1985); Butler v. Elle, 281 F.3d 1014, 1023 n.8 (9th Cir.
23  2002).  A suit against a government employee in her personal or individual capacity is a suit
24  against the individual defendant only, it is not a suit against the governmental employer.
25  Kentucky, 473 U.S. at 166; Deocampo v. Potts, 836 F.3d 1134, 1142 (9th Cir. 2016).

26
27  [7] Caruso's opposition suggests that she believes that she has alleged individual capacity liability against defendants other than Hill.  The Court finds that the allegations that expressly state that Diaz, Miller, and Montes are sued in their official capacity, without mentioning individual capacity, are dispositive.  The Court will only read the Complaint as
28  alleging official capacity liability against these three defendants.  If Caruso intended to allege individual liability against a defendant other than Hill, then she may file an amended complaint that expressly alleges individual liability.

1    Caruso's allegations regarding the capacity of the of defendants have several

2  consequences.  First, the Eleventh Amendment bars monetary damages under 42 U.S.C. § 1983

3  against a state or an arm of the state.[8]  See Californians for Renewable Energy v. California Public

4  Utilities Comm'n, 922 F.3d 929, 941 (9th Cir. 2019); Brown v. California Dep't of Corr., 554

5  F.3d 747, 752 (9th Cir. 2009).  Therefore, Caruso may only obtain monetary damages against Hill,

6  because she is the only person sued in her individual capacity.  See Kentucky, 473 U.S. at 166;

7  Deocampo, 836 F.3d at1142; Butler, 281 F.3d  at 1023 n.8.  To the extent that the Complaint may

8  be read as seeking monetary damages based on an "official capacity" claim, dismissal of such

9  claims is appropriate.

10    Second, the Eleventh Amendment does not bar prospective injunctive or declaratory relief

11  that remedies constitutional violations or violations of federal law.  See Coalition to Defend

12  Affirmative Action v. Brown, 674 F.3d 1128, 1134 (9th Cir. 2012).  To obtain such prospective

13  relief, Caruso "need only identify the law or policy challenged as a constitutional violation and

14  name the official within the entity who can appropriately respond to injunctive relief."  Hartmann

15  v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013); see also Coalition, 674

16  F.3d at 1134.  Here, Hill is no longer the warden of CIW and appears to be retired.  Therefore, she

17  is not an official who can respond to a challenged policy.  Naming Hill in her official capacity

18  does not aid Caruso.  See Hartmann, 707 F.3d at 1127.  Third, and relatedly, suing Diaz, Miller,

19  and Montes in their official capacities appears to be redundant and unnecessary.  The effect of

20  suing each of these individuals in their official capacity is to name the State of California three

21  times as a defendant.  Cf. Butler, 281 F.3d at 1023 n.8.  Under these circumstances, dismissing or

22  dropping a redundant defendant(s) in the amendment or motions process is appropriate.  See

23  Melendres v. Arpaio, 784 F.3d 1254, 1260 (9th Cir. 2015).

24    3.    First Cause of Action – First Amendment Retaliation

25    A prisoner pursuing a First Amendment retaliation claim must show:  (1) a state actor took

26  some adverse action against him, (2) because of, (3) his protected conduct, (4) the adverse action

27

28  [8] "[T]he effect of the Eleventh Amendment must be considered sua sponte by federal courts."  Charley's Taxi Radio
Dispatch Corp. v. SIDA of Haw., Inc., 810 F.2d 869, 873 n.2 (9th Cir. 1987).

chilled his exercise of First Amendment rights, and (5) the adverse action did not reasonably advance a legitimate correctional goal.  Entler v. Gregoire, 872 F.3d 1031, 1040 (9th Cir. 2017); Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, the allegations show that Caruso engaged in conduct protected by the Constitution. Caruso pursued litigation involving a constitutional violation and, in the course of the CCWF Lawsuit, she informed the Court of alleged missing papers and improper searches, denials of library access, denials of legal copies, and false statements made by Hill to the Court under penalty of perjury.  This active litigation conduct constitutes petitioning activity that is protected by the First Amendment.  See Microsoft, 795 F.3d at 1047; Sanders, 504 F.3d at 912; Soranno's Gasco v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).

With respect to an adverse action, the complaint alleges that the transfer to CCWF was retaliatory and the opposition states that the transfer was done with a retaliatory motive.  See Complaint at 8:1; Doc. No. 21 at 6:1.  The Ninth Circuit has recognized that transfers to a different prison may constitute an adverse action for purposes of a First Amendment retaliation claim.  See Silva v. Di Vittorio, 658 F.3d 1090, 1105 (9th Cir. 2011); Vignolo v. Miller, 120 F.3d 1075, 1078 (9th Cir. 1997); Rizzo, 778 F.2d at 531-32.  Therefore, the Complaint sufficiently alleges that the transfer to CCWF is the adverse action at issue.[9]

Contrary to Defendants' arguments, there is also sufficient evidence that the transfer was done because of Caruso's litigation activities.  That is, Hill transferred Caruso with a retaliatory motive.  As described above, the Complaint alleges that Hill told Caruso at the classification hearing that "Caruso had worn out her welcome, that [Hill] was tired of dealing with Caruso, and that [Hill} wanted Caruso out of her prison."  Complaint ¶ 42.  To be sure, Caruso could have engaged in any number of activities that may have "worn out her welcome" at CIW, not all of which would be protected by the First Amendment.  However, by the time of the transfer, Hill had

---

[9] The opposition also states that "Defendants took adverse action by transferring [Caruso] to CCWF, thereby causing her indefinite solitary confinement."  Doc. No. 21 at 6:2-3.  The opposition then seems to suggest that Caruso's placement in Ad Seg at CCWF was an adverse action but does not expressly make that assertion.  Further, no Defendant appears to have made the decision to place or keep Caruso in Ad Seg at CCWF.  Therefore, the transfer to CCWF is the only adverse action that is adequately alleged with respect to the retaliation claim.

been ordered by the Magistrate Judge to conduct two investigations,[10] had been ordered to submit three responses to the Court (regarding missing evidence, the lack of copies and library access, and false statements regarding legal copies), and faced a threat of judicial sanctions, all because of filings made by Caruso in this Court.[11]   That is, Hill was the subject of significant and atypical Court orders and extra atypical work because of Caruso.   This extra work and pressure caused by Caruso's litigation conduct can reasonably be viewed as the basis for telling Caruso that her welcome had been worn out and that Hill was tired of "dealing with" Caruso.   Further, the transfer occurred about five months after Hill had submitted her last declaration regarding false statements.   Obviously, because Hill was the subject of Court orders and because she actually filed responses thereto, Hill clearly knew about Caruso's filings regarding missing evidence, library and copying issues, and false statements made to the Court.   Cf. Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (holding that a prisoner failed to establish a retaliatory motive/causation because, although there was proximity in time, there was no evidence that the decision makers knew about the prisoner's protected conduct); Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982) (holding in Title VI context that "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.").   The Court finds that, viewed in the light most favorable to Caruso, the combination of Hill's knowledge of Caruso's filings, the timing of the transfer, and the statements made by Hill at the March 2019 classification hearing are sufficient to support an inference of causation/a retaliatory motive.[12]   Cf. Coszalter v. City of

---

[10] Technically, Hill conducted three investigations at the order of the Magistrate Judge.  However, the first investigation was ordered *sua sponte* because mail was being returned to the Court as "undeliverable."  Because that issue was not raised by Caruso, the Court does not consider that investigation to be relevant to causation.

[11] The Complaint also suggests that Caruso's motion to strike may support an inference of causation.  However, the motion to strike was essentially a dispute between the attorneys involved in this case.  Hill was not ordered to do anything and made no filings in connection with that motion.  Without more, the motion to strike is nothing more than a legal dispute between counsel; it is not a reasonable basis to infer a retaliatory motive.

[12] Caruso's opposition notes the allegations that Hill had previously engaged in a retaliatory transfer of a prisoner under "similar circumstances."  Under Rule 404(b), a person's "prior bad acts" may be admitted to prove motive or intent.  See Fed. R. Civ. P. 404(b).  As long as the prior retaliatory transfers are sufficiently similar to the transfer in this case, those transfers may also support the inference that Hill acted with a retaliatory motive/intent.  However, because the Court finds that the timing of the transfer, Hill's knowledge of Caruso's protected activity, and Hill's statements at the classification hearing all combine to sufficiently support causation, the Court need not make any rulings regarding the alleged prior retaliatory transfers.

1  Salem, 320 F.3d 968, 977 (9th Cir. 2003) (noting that timing and statements made by the

2  defendant may show causation); Pratt, 65 F.3d at 808.

3       Additionally, contrary to Defendants' arguments, there is sufficient evidence of a chilling

4  effect.  Despite how the fourth element is phrased, the issue is not whether Caruso's First

5  Amendment petitioning rights were actually chilled.  "[A]n objective standard governs the chilling

6  inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,'

7  but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness

8  from future First Amendment activities.'"  Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009)

9  (quoting Rhodes, 408 F.3d at 568-69).  As discussed above, a transfer to a different prison can be

10  an adverse action.  That adversity is amplified in this case because Caruso had five validated

11  enemies at CCWF.  Caruso voiced this concern to Hill, and Hill said that she had done work on

12  the issue, but that Caruso would have to figure out how to deal with the enemies at CCWF once

13  Caruso arrived.  The allegations indicate that Caruso was afraid to go to CCWF.  The Court

14  concludes that involuntarily transferring an inmate to a prison where there are a number of

15  validated enemies and where the inmate is afraid to go would chill or silence a person of ordinary

16  firmness.  See id.

17       Although the Court rejects Defendants' bases for dismissing the first cause of action, there

18  is a problem.  The Complaint makes no allegations regarding the fifth element of a retaliation

19  claim.[13]  Caruso has not alleged or explained why no valid correctional goal was advanced by

20  Caruso's transfer to CCWF.  Such an allegation is necessary not only to plead a plausible

21  retaliation claim, see Rizzo, 778 F.2d at 532, but also because the Complaint alleges that Miller

22  determined that Caruso's presence at CIW posed an unreasonable risk to the safety of those at

23  CIW.  If Caruso posed an unreasonable risk to those at CIW, a valid correctional goal would be

24  served by transferring her CCWF.  In short, because the Complaint does not adequately address

25  the fifth element of a retaliation claim, dismissal is proper.

26  _____

27  [13] As described above, Caruso's opposition addresses the fifth element and states that no valid penological purpose
was served by the transfer.  However, this section of the opposition does not cite to any paragraphs within the
Complaint.  See Doc. No. 21 at 11:11-12:6.  This portion of the opposition does not clarify an ambiguous paragraph,

28  rather it adds a necessary allegation that is missing from the Complaint.  Therefore, this portion of the opposition does
not save the first cause of action.  See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

1        4.      Second Cause of Action – Fourteenth Amendment Due Process

2        Caruso alleges both Substantive and Procedural Due Process claims.  The Court will

3  examine each claim separately.

4                a.      Procedural Due Process

5        According to her opposition, Caruso's Procedural Due Process claim is based on the

6  unlawful transfer and her resulting Ad Seg confinement without a "non-disciplinary status"

7  designation at CCWF.  After review, no plausible procedural due process claim is stated.

8        First, absent a particular state law that creates a protected liberty interest, prisoners have no

9  due process protections that derive from the Constitution with respect to inter-prison transfers.

10  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Montanye v. Haymes, 427 U.S. 236, 242

11  (1976).  California law does not create a liberty interest with respect to prison transfers.  Warner v.

12  Tileston, 2018 U.S. Dist. LEXIS 114734, *59 (N.D. Cal. July 10, 2018); Monroe v. Kernan, 2017

13  U.S. Dist. LEXIS 148646, *11-*12 & n.8 (C.D. Cal. June 15, 2017); Ly v. Swarthout, 2014 U.S.

14  Dist. LEXIS 21468, *3-*5 (N.D. Cal. Feb. 18, 2014); Gray v. Hernandez, 2011 U.S. Dist. LEXIS

15  29163, *21-*22 (S.D. Cal. Mar. 14, 2011); Endsley v. Mayberg, 2010 U.S. Dist. LEXIS 124166,

16  *24 n.12 (E.D. Cal. Nov. 19, 2010).  Therefore, any Procedural Due Process claim based on the

17  transfer to CCWF fails.[14]

18        Second, assuming that Caruso has been in Ad Seg at CCWF since her arrival in March

19  2013 (as discussed above the allegations are ambiguous), and that she is not "non-disciplinary

20  status" (meaning that she does not enjoy the same privileges as general population prisoners) even

21  though she was never placed in Ad Seg at CCWF for disciplinary reasons, this suggests that

22  Caruso is facing conditions that impose "atypical and significant hardship on [her] in relation to

23  the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995); Brown v.

24  Orgon Dep't of Corr., 751 F.3d 983, 989 (9th Cir. 2014); see also Keenan v. Hall, 83 F.3d 1083,

25  1089 (9th Cir. 1996) ("The Sandin court seems to suggest that a major difference between the

26  conditions of the general prison population and the segregated population triggers a right to a

27

28
[14] The Court notes that there are no allegations that CCWF is a "supermax" prison like that prison at issue in *Wilkinson*, such that Caruso to a certainty would face conditions at CCWF that are an "atypical hardship."

1   hearing."). However, there are no allegations that sufficiently link the Defendants to the particular

2   Ad Seg housing determination, the length of time in Ad Seg, or the decision to keep Caruso in Ad

3   Seg without a "non-disciplinary status." The latter point is particularly important.[15]  It is the

4   Court's understanding from the Complaint and the opposition that the problem with Caruso's Ad

5   Seg assignment is not necessarily being in Ad Seg, it is being in Ad Seg without the "non-

6   disciplinary status" designation. The Court understands that if Caruso had the "non-disciplinary

7   status," she would have the same privileges as a general population inmate, including access to

8   therapies/rehabilitation and family visitations. See Complaint ¶ 62. The decision not to designate

9   Caruso as "non-disciplinary status" would seem to rest entirely with staff at CCWF. Further, no

10  allegations indicate that Defendants knew that Caruso would face prolonged Ad Seg confinement

11  without a "non-disciplinary status." There is simply an insufficient link from Defendants to

12  prolonged Ad Seg confinement without a "non-disciplinary status." Cf. Johnson v. Duffy, 588

13  F.2d 740, 743 (9th Cir. 1978) (explaining how a defendant "subjects" or "causes to be subject" a

14  constitutional deprivation for purposes of 42 U.S.C. § 1983).

15          In sum, no plausible Procedural Due Process claim is alleged.

16                      b.      Substantive Due Process

17          Caruso argues that she has a Substantive Due Process right to be free of state created

18  danger, which was violated by the transfer to CCWF. The Ninth Circuit has certainly recognized a

19  Fourteenth Amendment right against harm from "state created danger." E.g. Pauluk v. Savage,

20  836 F.3d 1117, 1122 (9th Cir. 2016). Under a "state created danger" claim, "a state actor can be

21  held liable for failing to protect a person's interest in his personal security or bodily integrity when

22  the sate actor affirmatively and with deliberate indifference placed that person in danger." Id.

23  [B]y its very nature, the [state created danger] doctrine only applies in situations where the

24  plaintiff was directly harmed *by a third party* . . . ." Henry A. v. Willden, 678 F.3d 991, 1002 (9th

25

26  [15] Even crediting the argument that Hill knew that Caruso would go to Ad Seg upon her arrival at CCWF because of
    her validated enemies, there are no allegations that sufficiently indicate that Hill (or any Defendant) knew that the Ad

27  Seg placement would last well over a year (and apparently counting). Further, simply knowing that someone will go
    to Ad Seg does not in and of itself show a knowledge that the inmate will face "atypical and significant hardship."

28  Generally, short stints in Ad Seg generally are not "atypical hardships." Cf. Sandin, 515 U.S. at 486 (noting that the
    duration of segregation was 30 days).

1 Cir. 2012) (emphasis in original).  After consideration, the Court finds that there are several

2 problems with Caruso's theory.

3        First, there is no indication that Caruso has suffered any kind of physical injury while at

4 CCWF, let alone at the hand of any of her five validated enemies.  Instead, the Complaint suggests

5 that she is suffering from fear or mental anguish about the possibility of being harmed by her five

6 validated enemies.  The problem is that "[n]o federal civil action may be brought by a prisoner

7 confined in a [prison] for mental or emotional injury suffered while in custody without a prior

8 showing of physical injury or the commission of s sexual act."  42 U.S.C. § 1997e(e).  This section

9 bars recovery only for mental or emotional injury, unless there is a showing of non-de minimis

10 physical injury.  See Grenning v. Miller-Stout, 739 F.3d 1235, 1238 (9th Cir. 2014); Jackson v.

11 Carey, 353 F.3d 750, 758 (9th Cir. 2003); Oliver v. Keller, 289 F.3d 623, 629 (9th Cir. 2002).

12 Because the Complaint does not allege that Caruso has suffered any physical injuries at the hands

13 of her enemies (which is the danger identified by the Complaint), she may not seek monetary

14 damages for mental or emotional injuries.  See Smith v. Yarbough, 578 F. App'x 721, 721 (9th

15 Cir. 2014); Jackson, 353 F.3d at 758.

16        Second, as the Court understands Caruso's position, she contends that she been put in a

17 more dangerous position because she is now housed in an institution that also houses five of her

18 validated enemies.  Again, the Court does not see an allegation in the Complaint or a

19 representation in the opposition that Caruso has actually been harmed by a third-party/one of her

20 enemies.  Without harm to Caruso from a third-party, the state created danger doctrine does not

21 apply.  Henry A., 678 F.3d at 1002.

22        Third, Caruso cites no cases that have recognized that convicted prisoners have such a

23 Fourteenth Amendment right.  The Court is unaware of any Ninth Circuit cases that have applied

24 the "state created danger" theory to a convicted prisoner.  Other courts have either expressly

25 rejected the "state created danger" theory as applied to convicted prisoners or expressed

26 significant doubt about this theory because the Eighth Amendment provides constitutional

27 protections for the conditions of confinement faced by prisoner.  See Beenick v. Lefebvre, 684 F.

28 App'x 200, 205 (3d Cir. 2017) (applying Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 261

(3d Cir. 2010)); <u>Longoria v. Texas</u>, 473 F.3d 586, 592 & n.8 (5th Cir. 2006); <u>Yoakum v. City of</u>
<u>Yukon</u>, 2019 U.S. Dist. LEXIS 204478, *12-*13 (W.D. Okl. Nov. 25, 2019); <u>Robbins v. Jordan</u>,
2014 U.S. Dist. LEXIS 42971, *9-*10 (M.D. Ga. Mar. 31, 2014); <u>Love v. Salinas</u>, 2013 U.S. Dist.
LEXIS 110692, *19 n.5 (E.D. Cal. Aug. 5, 2013); <u>but see</u> <u>O'Brien v. Gularte</u>, 2020 U.S. Dist.
LEXIS 115348, *47-*49 (S.D. Cal. June 30, 2020) (refusing to hold that a convicted prisoner
could not bring a Fourteenth Amendment state created danger claim).  The weight of authority
does not support the recognition of a "state created danger" claim by Caruso.

Finally, and consistent with the above cited cases, the Ninth Circuit has held that the
Eighth Amendment, and not the Fourteenth Amendment, provides the applicable standards for
evaluating convicted prisoners' conditions of confinement claims.  <u>Gary H. v. Bergstrom</u>, 831
F.2d 1430, 1432 (9th Cir. 1987).  The Ninth Circuit has also confirmed that the Supreme Court has
recognized an Eighth Amendment right of prisoners to be protected from violence at the hands of
other prisoners.  <u>Castro v. County of L.A.</u>, 833 F.3d 1060, 1067 (9th Cir. 2016) (citing <u>Farmer v.</u>
<u>Brennan</u>, 511 U.S. 825, 833 (1994)).  Although Caruso complains about the transfer to CIW, the
ultimate harmed feared by Caruso is injury from other inmates (her five validated enemies) at
CIW.  Such a claim appears to be a conditions of confinement claim regarding Caruso's safety.
Under *Castro* and *Gary H.*, Caruso's claim would be governed by the Eighth Amendment.

In sum, no plausible Substantive Due Process claim is alleged, and dismissal is
appropriate.

### 5.    Leave to Amend

With respect to the First Amendment retaliation claim, the Court finds that it is very likely
that Caruso will be able to allege the absence of a correctional purpose.  Therefore, the first cause
of action will be dismissed with leave to amend.

With respect to the second cause of action for violation of Fourteenth Amendment
Procedural Due Process, it appears to the Court that Caruso is attempting to shoe-horn Eighth
Amendment principles that are applicable to CCWF personnel into Fourteenth Amendment
Procedural Due Process claims against the named Defendants.  Although the Court has significant
doubts that a Procedural Due Process claim can be stated, the Court cannot say with sufficient

1   certainty that amendment would be futile.  Thus, this claim will be dismissed with leave to amend.

2         With respect to the second cause of action for violation Fourteenth Amendment

3   Substantive Due Process based on the "state created danger" doctrine, the allegations do not

4   demonstrate any physical injuries to Caruso from any of her five validated enemies.  Further, it

5   does not appear that this Fourteenth Amendment theory has any application to Caruso as a

6   convicted prisoner.  Therefore, this claim will be dismissed without leave to amend.

7         Additionally, any amended Complaint should limit the number of defendants who are sued

8   in their official capacity.  Further, while an amended complaint may incorporate by reference any

9   prior paragraphs that are necessary to pleading a plausible cause of action, the amended complaint

10  may not use the improper expedient of simply incorporating by reference all prior paragraphs, be

11  they supportive or relevant to the cause of action or not, since such a practice does not provide

12  adequate notice for purposes of Rule 8.  See Weiland v. Palm Beach Cnty. Sheriff's Office, 792

13  F.3d 1313, 1321-23 (11th Cir. 2015); Deerpoint Grp., Inc. v. Agrigenix LLC, 345 F.Supp.3d 1207,

14  1234 n.15 (E.D. Cal. 2018).   Additionally, if Caruso wishes to bring suit against Miller, Diaz, or

15  Montes in an individual capacity, the amended complaint may do so.  Relatedly, the amended

16  complaint should also clearly identify which forms of relief she is attempting to obtain from which

17  Defendants and in what capacity.  Finally, to the extent that such allegations may remain relevant,

18  the amended complaint should clarify if Caruso spent any time in the CCWF general population or

19  if she has always been in Ad Seg at CCWF since her March 2019 transfer.

20

21                                **ORDER**

22         Accordingly, IT IS HEREBY ORDERED that:

23  1.    Defendants' motion to dismiss is GRANTED;

24  2.    The second cause of action based on Fourteenth Amendment Substantive Due Process is

25        DISMISSED without leave to amend;

26  3.    The first cause of action and the remainder of the second cause of action are DISMISSED

27        with leave to amend;

28  4.    No later than twenty-eight (28) days from service of this order, Plaintiff may file and

19

amended complaint that is consistent with the analyses and directions of this order;

5.     Defendants may file an appropriate response to any amended complaint no later than twenty-one (21) days from service of the amended complaint; and

6.     If Plaintiff fails to file a timely amended complaint, then leave to amend will be withdrawn automatically and this case will close without further notice.

IT IS SO ORDERED.

Dated:   July 15, 2020                               

                        SENIOR  DISTRICT  JUDGE