UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARUSO,<br><br>        **Plaintiff**<br><br>        v.<br><br>MOLLY HILL et al.,<br><br>        **Defendants** | CASE NO. 1:20-CV-0084 AWI EPG (PC)<br><br>**ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS**<br><br>(Doc. No. 29) |

    This is a prisoner civil rights action brought by Plaintiff Gina Caruso ("Caruso") against current and former personnel of the California Institution for Women ("CIW") prison. Caruso is represented by counsel and alleges two causes of action under 42 U.S.C. § 1983, one for violation of the First Amendment and one for violation of the Fourteenth Amendment. The active complaint is the First Amended Complaint ("FAC"), which was filed after the Court granted Defendants' first motion to dismiss. Currently before the Court is Defendants' second Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion will be granted.

**RULE 12(b)((6) FRAMEWORK**

    Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc.,

1  795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-
2  pleaded allegations of material fact are taken as true and construed in the light most favorable to
3  the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However,
4  complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the
5  elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson
6  v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not
7  required to accept as true allegations that contradict exhibits attached to the Complaint or matters
8  properly subject to judicial notice, or allegations that are merely conclusory, unwarranted
9  deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media
10 Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a
11 complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is
12 plausible on its face."  Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial
13 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
14 inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Somers
15 v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer
16 possibility," but less than a probability, and facts that are "merely consistent" with liability fall
17 short of "plausibility."  Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  The Ninth Circuit has
18 distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption
19 of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause
20 of action, but must contain sufficient allegations of underlying facts to give fair notice and to
21 enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as
22 true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing
23 party to be subjected to the expense of discovery and continued litigation.  Levitt v. Yelp! Inc.,
24 765 F.3d 1123, 1135 (9th Cir. 2014).  If a motion to dismiss is granted, "[the] district court should
25 grant leave to amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh,
26 Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if
27 amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated
28 opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

## FACTUAL BACKGROUND

While Caruso was incarcerated at the Central California Women's Facility ("CCWF") prison, she was subject to an improper strip search in July 2013.

In May 2015, Caruso filed a lawsuit in this Court against CCWF personnel. That lawsuit, the "CCWF Lawsuit," remains pending. After filing the CCWF Lawsuit, Caruso was transferred to CIW in October 2015, where she continued to prosecute the CCWF Lawsuit *pro se*.

On March 14, 2019, following a number of court orders in which Defendant Warden Molly Hill was required to respond and conduct atypical investigations as a result of Caruso's filings in the CCWF lawsuit,[1] a classification hearing was held at CIW involving Caruso, Hill, Defendant Associate Warden Richard Montes ("Montes"),[2] Correction Counselor C. Alvarez, and psychologist Dr. Celosse. At this hearing, Hill stated that Caruso had worn out her (Caruso's) welcome at CIW, that Hill was tired of dealing with Caruso, and that Hill wanted Caruso out of CIW. Hill compared herself and the Warden of CCWF to divorced parents who passed their unwanted children between each other. Hill stated that it was CCWF's turn to deal with Caruso and that a transfer from CIW to CCWF had been approved through a "Warden to Warden Agreement." Caruso reminded Hill that Caruso had five validated enemy concerns at CCWF. Hill responded that she had worked very hard to make the five enemy concerns go away and that Caruso would have to figure out how to deal with any enemies upon arrival at CCWF. Hill ordered Caruso's immediate and involuntary transfer to CCWF and prohibited Caruso from returning to her cell to collect her personal belongings. Montes failed to intervene to stop the transfer. After the hearing concluded, Caruso was escorted to a transport van for transport to CCWF. Dr. Celosse was not permitted to meet with Caruso in a therapeutic setting and was only allowed to speak with Caruso briefly in the transportation van. Hill's decision to transfer Caruso was made with full knowledge that Caruso had five validated enemy concerns at CCWF.

Caruso alleges that pursuant to 15 Cal. Code Reg. § 3379, Hill was required to transfer

---

[1] This is the Court's shorthand. A more thorough recitation of the litigation activity in the CCWF lawsuit can be found in *Caruso v. Hill*, 2020 U.S. Dist. LEXIS 125709 (E.D. Cal. July 15, 2020).

[2] The FAC identifies Montes as the Acting Warden of CIW, but in March 2019, Montes was an Associate Warden. The FAC also alleges that, as of November 2019, Hill is no longer the Warden of CIW.

Caruso pursuant to actions taken by the classification committee, which required a Classification Staff Representative ("CSR") to endorse the transfer from CIW to CCWF. Caruso alleges that § 3379 creates a liberty interest in having a prisoner's transfer reviewed and approved by a CSR. In disregard of § 3379, Hill evaded the CSR process and took independent and unregulated action to transfer Caruso to the general population of CCWF pursuant to the illegal warden transfer agreement. The rationale for transfer that is identified in the warden transfer agreement was that Caruso was a Level IV inmate with a classification score of 711 and that CIW was not a Level IV facility. The rationale also stated that Caruso had enemy concerns with CIW's general population and that her presence at CIW's general population was a threat to institutional security. However, as of the March 2019 transfer, Caruso had no validated enemies at CIW. Hill provided the false rationale for the CCWF transfer. The warden transfer agreement documented Hill's expectation that Caruso would be housed in the general population at CCWF despite the known risk to Caruso's physical safety posed by her enemies at CCWF. The warden transfer agreement is an unregulated and underground process, and women prisoners have long been subject to such illegal transfers.

Upon arrival at CCWF on March 14, 2019, CCWF initially began to process Caruso for release into the general population. In response to Caruso's pleas to review her enemy concerns, CCWF placed Caruso in solitary confinement/Ad Seg pending further investigation. Placement in Ad Seg was for safety, not discipline. CCWF validated Caruso's enemy concerns in August 2019. To this day, Caruso continues to be in Ad Seg for safety reasons, where she is confined in her cell for 24 hours a day, except for 15 minute showers three times per week, and for medical and legal visits. While in Ad Seg, Caruso has not been able to participate in rehabilitative and therapeutic programs or church and has been unable to have family visits. For most of Caruso's confinement in Ad Seg, CCWF denied Caruso non-disciplinary status, which would have provided the same privileges as prisoners housed in the general population. Caruso anticipates that having disciplinary status will limit her ability to participate in programming upon release to the general population and negatively impact her ability to seek parole. In Ad Seg, Caruso is subject to numerous strip searches. Caruso alleges that Hill and Montes maliciously intended for Caruso to

4

be released to the general population at CCWF, as a known risk to her physical safety, but are nonetheless liable for the damages resulting from Caruso's prolonged and continued confinement in Ad Seg at CCWF.

Following the validation of Caruso's enemies in CCWF, Caruso was informed that her single validated enemy at CIW had been resolved. Caruso was informed in October 2019 that she would be transferred back to CIW, pending a phone call between the wardens of CIW and CCWF. However, Hill refused to accept Caruso's transfer back to CIW, and the transfer was halted.

Caruso argues that Hill's illegal transfer is part of a pattern of illegal retaliatory transfers, and that Defendant Secretary Ralph Diaz knew or should have known of the illegal transfers yet has failed to take corrective action.

## **DEFENDANTS' MOTION**

*Defendants' Arguments*

Defendants argue that the second cause of action for violation of Fourteenth Amendment procedural due process fails because the FAC does not plead that a protected liberty interest was impacted by the transfer from CIW to CCWF. The Fourteenth Amendment itself provides no liberty interest against involuntary prison transfers. Further, 15 CCR § 3379 creates no liberty interest in having a transfer reviewed and approved by a CSR. Section 3379 itself provides that a CSR need not approve a transfer under "emergent circumstances." A non-exclusive list of emergent circumstances is provided, which means that § 3379 does not guarantee that all inmate transfers will or must be reviewed by a CSR. There is no substantive limitation on a prison official's discretion to transfer under § 3379. Additionally, while a transfer might implicate a due process right to avoid atypical conditions of confinement, Caruso has again failed to adequately link any conditions of confinement at CCWF with any named Defendant. In fact, the FAC alleges that Hill anticipated that Caruso would not be placed in Ad Seg, but within the general population of CCWF. It was Caruso herself who requested that she be placed in Ad Seg.

With respect to Secretary Diaz, the FAC alleges that he should have been aware of a pattern of retaliatory transfers by Hill. However, the FAC identifies only one other retaliatory

5

transfer by Hill. A single prior transfer does not constitute a pattern. Without a pattern of retaliatory conduct, there is no basis for liability against Secretary Diaz.

Finally, Caruso has alleged that all Defendants violated her rights, even though Diaz and Defendant Foss are sued only in their official capacities. This is the same as naming the State of California multiple times as a Defendant and is unnecessary. Defendants argue that Diaz and Foss should be dismissed as duplicative because Montes is sued in his official and individual capacity. Further, there are no facts alleged against Diaz or Foss that would support a retaliation claim.

*Plaintiff's Opposition*

Caruso argues that she has alleged a plausible Procedural Due Process claim based on the liberty interest created by state regulations. Caruso contends that state regulations limit the power of prison officials to transfer prisoners in a way that ignores enemy and safety concerns. A CSR is required to approve a transfer in order to ensure an inmate's enemies are considered in determining appropriate prison placement. This insures the safety of prisoners, staff, and other inmates. None of the cases relied upon by Defendants involved a failure to obtain CSR approval for a transfer. Although there are limited exceptions for when CSR approval is not necessary, Defendants never explain why the transfer at issue was made under emergent circumstances. Additionally, the incidents of prison life confronted by Caruso were not consistent with the ordinary incidents of prison life. Hill and Montes took extraordinary actions by transferring Caruso to CCWF after removing her enemy concerns and then ordering her transfer to the general population. These allegations indicate that Caruso's enemy concerns were considered and intended to cause her physical harm. Further, Caruso emphasizes that she has been in Ad Seg for 1 ½ years without the same privileges as prisoners housed in the general population. CCWF's denial of non-disciplinary status will also have a negative impact on Caruso's rehabilitation efforts, overall sentence, and prospects for parole. Finally, Caruso argues that the transfer was retaliatory in nature and violated the First Amendment. Defendants' abusive and retaliatory use of the transfer process to punish female prisoners who exercise their rights to file and participate in lawsuits should be construed as an atypical and significant hardship.

Caruso also argues that she alleged a plausible retaliation claim against Defendant Diaz.

6

Apart from the other retaliatory transfer identified in the FAC, Caruso requests that the Court take judicial notice of five other cases in which Hill or the warden of CIW engaged in retaliatory transfers. Caruso argues that the six additional cases are sufficient to show a pattern or practice of retaliatory transfers.

Finally, Caruso explains that she seeks three forms of declaratory and injunctive relief: transfer back to CIW, prohibit retaliation regarding classification and housing needs, and prohibit the use of warden transfer agreements to transfer female prisoners. Caruso explains that she attempted to meet and confer with Defendants' counsel to determine if there is a Defendant who can provide these areas of relief. However, Defendants' counsel did not cooperate. Therefore, because it is unclear if there is a Defendant who can provide relief, it is appropriate to sue Defendants Foss, Montes, and Diaz in their individual capacity.

*Discussion*

1. Procedural Due Process

Prisoners have no due process protections that derive from the Constitution with respect to inter-prison transfers. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Montanye v. Haymes, 427 U.S. 236, 242 (1976). However, states may create liberty interests through statutes, regulations, and policies. Wilkinson, 545 U.S. at 222; Chappell v. Mandeville, 706 F.3d 1052, 1063 (9th Cir. 2013). These state laws are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 515 U.S. 472, 484 (1995); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). In order to determine whether a prison hardship imposes an atypical and significant hardship, courts should consider at least three factors: (1) whether the conditions of confinement "mirrored those conditions imposed upon inmates in analogous discretionary confinement settings, namely administrative segregation and protective custody, (2) the duration and intensity of the conditions of confinement, and (3) whether the change in confinement would inevitably affect the duration of the prisoner's sentence. Chappell, 706 F.3d at 1064-65. Statutory or regulatory "procedural requirements, even if mandatory, do not raise a constitutionally cognizable liberty interest." Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993).

Here, Caruso argues that CDCR regulations provide her with a liberty interest in a transfer that is reviewed by a CSR in order to account for her enemy concerns. The FAC specifically and exclusively lists only 15 C.C.R. § 3379. In relevant part, § 3379 reads:

> Unless exempted within this section, any inmate transfer shall require a classification committee action and endorsement by a classification staff representative (CSR) or expedited transfer approval by the Chief of the Population Management Unit. A classification committee action and CSR endorsement is not required in the cases of . . . expedited transfers warranted under emergent circumstances, including but not limited to inmate medical or mental health needs and transfers from one restricted housing unit to a similar restricted housing unit.

15 C.C.R. § 3379(a)(1).

No case has held that § 3379 creates any liberty interest that is entitled to procedural due process protection. In fact, courts find that § 3379 creates no liberty interests. See Lucas v. Koenig, 2020 U.S. Dist. LEXIS 128690, *10-*11 (N.D. Cal. July 21, 202); Warner v. Tileston, 2018 U.S. Dist. LEXIS 114734, *59 (N.D. Cal. July 10, 2018); Monroe v. Kernan, 2017 U.S. Dist. LEXIS 148646, *11-*12 & n.8 (C.D. Cal. June 15, 2017); Ly v. Swarthout, 2014 U.S. Dist. LEXIS 21468, *3-*5 (N.D. Cal. Feb. 18, 2014); Gray v. Hernandez, 2011 U.S. Dist. LEXIS 29163, *21-*22 (S.D. Cal. Mar. 14, 2011); Denham v. Aranda, 2010 U.S. Dist. LEXIS 61990, *27-*28 (S.D. Cal. May 3, 2010); Endsley v. Mayberg, 2010 U.S. Dist. LEXIS 124166, *24 n.12 (E.D. Cal. Nov. 19, 2010); Jin v. Forgia, 2007 U.S. Dist. LEXIS 105769, *11-*12 (C.D. Cal. Dec. 6, 2007); Kevakian v. Kennedy, 1995 U.S. Dist. LEXIS 21694, *21-*22 (N.D. Cal. Jan. 5, 1995). The Court agrees with these cases.

It is true that none of these cases deal with a situation in which a prisoner was challenging the failure to have her transfer reviewed by a CSR. However, not even § 3379 requires that every transfer be reviewed by a CSR. Emergency transfers may be accomplished without a CSR's review.[3] Further, § 3379 does not explain under what circumstances a transfer should be granted, denied, delayed, or modified. There are no limits on a CSR's review, or on the decisions that a CSR can reach, nor is there exclusive objective criteria for determining whether an emergency exists such that a CSR's review is unnecessary. Review by a CSR appears to be a procedural requirement that is not even absolute. As a procedural requirement, review by a CSR of a prison

---

[3] The Court notes that several non-exclusive examples of "emergencies" are identified within § 3379.

transfer is not a protected liberty interest and cannot form the basis of a Fourteenth Amendment claim. See Smith, 992 F.2d at 989; Warner, 2018 U.S. Dist. LEXIS 114734 at *59; Ly, 2014 U.S. Dist. LEXIS 21468 at *4-*5; Kevakian, 1995 U.S. Dist. LEXIS at *21-*22.

Caruso has alleged that ever since her 2019 transfer, she has been in Ad Seg and thus, faces an atypical and significant hardship. However, § 3379 is merely a procedural statute that describes inmate transfers. There is no question that California may change Caruso's place of confinement, even to a less agreeable prison, because she is a convicted prisoner. Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985). Section 3379 does not provide for any particular conditions of confinement, for the imposition of any type of restraint whatsoever, or have any discernable effect on parole considerations. Further, Caruso is classified as a Level IV prisoner and CCWF is considered a Level IV prison.[4] There is nothing improper about a Level IV prisoner being placed in a Level IV prison. Finally, part of the reason why Caruso is in Ad Seg is at her own request because she fears harm from validated enemies. There are no allegations that any Defendant is responsible for either Caruso's placement in Ad Seg or the refusal of CCWF personnel to grant her non-disciplinary status. It is the failure of CCWF to give Caruso the "non-disciplinary" status that is causing Caruso hardship. Section 3379 has nothing to do with CCWF's decision to keep Caruso housed in Ad Seg or without a non-disciplinary status.[5]

Finally, Caruso argues that the transfer was unconstitutional and intended to cause her physical harm. The Court agrees that Caruso has alleged a plausible First Amendment retaliation claim. If the transfer was unconstitutional because it was made in retaliation for Caruso exercising her constitutional rights, then that violation will be remedied through first cause of action and the First Amendment. Further, if Caruso can show that the retaliatory transfer was intended by Defendants to at least in part cause Caruso physical injury at the hands of inmates at CCWF, such conduct would support a finding of malice or oppression and thus, punitive damages. Again, however, punitive damages is appropriate for the violation of the First Amendment. Caruso is

---

[4] The parties dispute whether CIW is a Level IV facility, but there is no dispute that CCWF is a Level IV facility.

[5] The Court is sympathetic to Caruso's complaints that she should have a non-disciplinary status if she is housed in Ad Seg. However, the housing and classifications decisions, including disciplinary and non-disciplinary status, are uniquely under the purview of CCWF personnel, none of whom are parties to this case.

improperly trying stretch a clear First Amendment retaliation claim to also encompass a Fourteenth Amendment procedural due process claim.

In sum, § 3379 is a procedural regulation that creates no restraints or conditions of confinement, but instead addresses prison transfers without an absolute requirement for CSR review.[6]  Section 3379 imposes no restraints on an inmate that constitute an atypical and significant hardship.  Therefore, § 3379 is not a source for Fourteenth Amendment procedural due process protection.  See Smith, 992 F.2d at 989; Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir. 1986) (noting that no procedural protections are required when a plaintiff does not possess a liberty interest); Warner, 2018 U.S. Dist. LEXIS 114734 at *59; Ly, 2014 U.S. Dist. LEXIS 21468 at *4-*5; Kevakian, 1995 U.S. Dist. LEXIS at *21-*22.  Given the Court's analysis, and the prior dismissal, the dismissal of the second cause of action will now be without leave to amend.

       2.       Defendants Diaz & Foss

At this time, there appears to be no reason to keep either Diaz or Foss in this lawsuit.  Diaz and Foss are sued only in their official capacities.  This is the equivalent of bringing suit against the State of California.  Kentucky v. Graham, 473 U.S. 159, 166 (1985); Butler v. Elle, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002).  Montes is sued in both his individual and official capacities.  Again, suing Montes in an official capacity is the equivalent of suing the State of California.  Thus, the State of California is named as a Defendant three times in the FAC.

The parties could not agree about eliminating official capacity defendants apparently because of a disagreement regarding the viability of Caruso's procedural due process claim.  That disagreement has been decided by the Court; there will not be a procedural due process claim.  Therefore, any injunctive relief that was appropriate only through the second cause of action cannot be granted.  Further, both in Defendants' motion and Defendants' reply, Defendants contend that Foss and Diaz should be dismissed as duplicative parties because Montes is being sued in both an individual and official capacity.  That is, Montes in his official capacity already represents the State of California as a named Defendant.  The Court takes all Defendants to be

---

[6] The Court notes that Caruso's opposition cites to regulatory provisions that are not identified in the FAC.  The Court has reviewed those provisions and cannot conclude that they transform § 3379 into the source of a protected liberty interest in having a CSR review a transfer.

representing that any prospective injunctive relief to which Caruso may be entitled with respect to her retaliation claim can be implemented and given full effect through Montes in his official capacity (assuming Caruso prevails on her retaliation claim).  With this understanding, there is no useful purpose served by retaining Diaz and Foss (again, who are only sued in their official capacities) as parties in this suit.[7]  Therefore, Foss and Diaz will be dismissed as unnecessary duplicative parties.[8]

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 29) is GRANTED;
2. Plaintiff's second cause of action is DISMISSED without leave to amend;
3. Defendants Diaz and Foss are DISMISSED without leave to amend; and
4. Within fourteen (14) days of service of this order, Defendants shall file an answer.

IT IS SO ORDERED.

Dated:   January 19, 2021                              _____
                                                         SENIOR DISTRICT JUDGE

---

[7] The parties will be ordered to meet and confer regarding the official capacity claim against Montes.  If the Court's understanding of Defendants' representations in the motion and reply is incorrect, then Caruso may file a motion for reconsideration.

[8] Caruso asks the Court to take judicial notice of past instances in which Hill or other CIW wardens used a warden to warden transfer agreement to retaliatorily transfer female prisoners.  Presumably the purpose of these additional cases is to show that Diaz knew or should have known about the improper transfer practice.  Defendants oppose the request for judicial notice.  The Court will not take judicial notice of the prior instances for two reasons.  First, Diaz is being dismissed as duplicative of Montes.  Montes is alleged to have known about and directly participated in Caruso's retaliatory transfer, and Defendants' briefing indicates that naming Montes in his official capacity is sufficient for any appropriate injunctive relief that may be available under the first cause of action.  Second, the Court has already held that a plausible retaliation claim has been alleged.  While it is possible that other instances of retaliatory transfers may be probative of Hill's intent or motive, because a plausible claim has been pled, there is no need to further examine Hill's intent or motive in the context of a Rule 12(b)(6) motion.  Therefore, since no useful purpose would be served by taking judicial notice of the disputed other instances of retaliatory transfers, the Court will deny Caruso's request for judicial notice.